***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Upon review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties are properly before the Industrial Commission, which has jurisdiction over this matter. *Page 2 
3. An employer-employee relationship existed between plaintiff and defendant-employer on April 7, 2006.
4. The Hartford was the carrier on the risk on April 7, 2006.
5. All parties have been properly designated and there is no question as to misjoinder or non-joinder of parties.
6. Plaintiff's average weekly wage is $555.24 as determined by Industrial Commission Form 22.
Documents received into evidence include the following:
 • Stipulated Exhibit #1-Medical Records; and
 • Deposition-Dr. Milam.
 *********** ISSUES
Whether plaintiff sustained a compensable injury on April 7, 2006?
Whether plaintiff is entitled to temporary total and/or temporary partial disability beginning April 7, 2006 to June 11, 2006 with a return to work date of June 12, 2006, and again on November 9, 2006 to November 19, 2006, with a return to work date of November 20, 2006?
Whether plaintiff is entitled to all medical benefits related to the accident of April 7, 2006?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 48 years of age. She began her employment with defendant-employer in February 2005, sewing leather and other fabrics onto furniture.
2. Plaintiff testified that on April 7, 2006, defendant-employer had a rush order from Southern Furniture and at the time, plaintiff was the only one who was sewing the heavy leather. Because defendant-employer wanted to timely complete the order, plaintiff went to the back room where the leather was kept in order to carry it to the sewing station. Typically the leather would be brought to her, but because this was a rush and there was no one to bring the leather to her, she went to obtain it. Instead of carrying the typical single 20 lb. roll, plaintiff elected to pick up two 20 lb. rolls. Plaintiff had never attempted to carry two rolls before so this was an unusual circumstance for her.
3. As plaintiff walked back to the sewing room with the two rolls, the bundles became untied and the top roll slipped. As plaintiff bent to grab it, she felt a pop in her neck and a pain down her arm. This occurred at approximately11:00 a.m. Plaintiff's workday concluded at 1:00 p.m. so she elected to complete her shift.
4. Initially, plaintiff thought that she may have only torn a muscle in her neck and that it would eventually resolve but her symptoms did not improve. On April 19 2006, she presented to the Davis Regional Medical Center Emergency Room for medical treatment. Notes from the hospital confirm that plaintiff was admitted at 7:00 a.m., with complaints of pain in the back of her neck that radiated into the upper back and into the hands. She also experienced numbness in her upper extremities, muscle spasms and decreased range of motion. The medical records reflect that plaintiff performed repetitive motion at work and that her pain had worsened over the past two days. Plaintiff was initially diagnosed with cervical radiculopathy at C6-7. *Page 4 
Plaintiff received an out-of-work slip from the treating physician during this visit indicating that she should not return to work until an orthopedic surgeon examined her.
5. Plaintiff was referred to Dr. Mark B. Williamson, Jr. an orthopedic surgeon, for follow-up care. Plaintiff testified that she attempted to schedule an appointment with Dr. Mark Williamson but was told that he no longer accepted workers compensation patients. Four days later, plaintiff testified that her pain became unbearable so she returned to the emergency room on April 23, 2006. The medical records noted that plaintiff had been previously seen on Wednesday night, and that she continued to have neck pain as the result of an injury at work on April 7, 2006. The medical records confirmed that plaintiff was unable to schedule an appointment with Dr. Williamson as previously instructed and that she had to have an MRI before an orthopedic specialist would examine her.
6. Plaintiff was diagnosed with acute neck pain and released from the emergency room with instructions to schedule an appointment with Dr. James Serene. Plaintiff was released from work until an orthopaedic specialist could examine her. Plaintiff attempted to schedule an appointment with Dr. Serene, but was told that he was also not accepting workers' compensation patients. Subsequently, plaintiff was referred to Dr. Alden Milam at Ortho Carolina in Huntersville, North Carolina. Plaintiff initially presented to Dr. Milam on May 2, 2006. Dr. Milam testified that plaintiff was referred to him from the Emergency Room at Davis Hospital because she had an injury at work. Dr. Milam further testified that the history plaintiff provided was that she was lifting two bundles of leather, each weighing about 40 pounds when she heard a pop in her neck and had immediate pain. Dr. Milam ordered an MRI, which was completed on May 4, 2006 and released plaintiff from work. *Page 5 
7. On May 16, 2006, plaintiff again presented to Dr. Milam. At that visit, the MRI was reviewed, which revealed a severe disc herniation at C4-5. Dr. Milam testified that there was no other report of injury and that he related the mechanism of injury to the work-related accident in April 2006. Following a review of the MRI, Dr. Milam noted that plaintiff had a fairly significant disc herniation that was compressing her spinal cord.
8. Dr. Milam recommended surgical disc replacement, which plaintiff underwent on May 26, 2006. Plaintiff returned for follow-up with Dr. Milam on June 6, 2006 and asked to return to work without restrictions. At the hearing before the Deputy Commissioner, plaintiff testified that even though her neck still hurt, she needed to return to work since she was the sole financial support for her family. She also testified that Dr. Milam wanted to give her work restrictions, but she asked that he allow her to return to work unrestricted. During his deposition, Dr. Milam confirmed how unusual it was for anyone to go back to work without restrictions two weeks after surgery and indicated, "she is probably the only patient I have ever had to go back to work that quick."
9. Based on the history provided by plaintiff, the testing and the physical examinations, Dr. Milam opined to a reasonable degree of medical certainty, that plaintiff's work injury on April 7, 2006 caused her disc herniation and the subsequent necessity for cervical surgery.
10. Plaintiff returned to work on June 12, 2006. Plaintiff had been on a verified disability status pursuant to her physician's orders from April 19, 2006, the time she first went to the Davis Regional Medical Center Emergency Room until her return to work on June 12, 2006.
11. Plaintiff remained as a full-time employee with defendant-employer until Dr. Milam released her from work again on November 9, 2006 for a two-week period. Dr. Milam *Page 6 
testified that plaintiff was able to maintain full-time employment as long as she had assistance; however, beginning in October, defendant-employer no longer allowed anyone to help plaintiff. The increase in lifting caused plaintiff to have continuing problems in her neck; therefore, Dr. Milam took her completely out of work starting November 9, 2006 for physical therapy. Dr. Milam testified that plaintiff did attend physical therapy and on November 17, 2006, he released her to return to full-duty work. Dr. Milam assigned a seven percent (7%) permanent partial disability rating to plaintiff's cervical spine.
12. Plaintiff returned to work approximately November 20, 2006 and continued on a full-time basis until she was put on permanent lay-off on January 5, 2007.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On April 7, 2006, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, resulting in injury to neck. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury on April 7, 2006, plaintiff is entitled to temporary total disability benefits from April 19, 2006 until June 11, 2006 and from November 9, 2006 until November 19, 2006. N.C. Gen. Stat. § 97-29.
3. Also as a result of her compensable injury, plaintiff is entitled to a seven percent (7%) permanent partial disability rating to her cervical spine, as assigned by Dr. Milam. N.C. Gen. Stat. § 97-31. *Page 7 
4. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fees hereinafter approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $370.12 per week from April 19, 2006 until June 11, 2006 and from November 9, 2006 until November 19, 2006. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Subject to a reasonable attorney's fees hereinafter approved, defendant shall pay compensation to plaintiff at the rate of $370.12 per week for 21 weeks for the seven percent (7%) permanent partial disability impairment rating to her cervical spine, assigned by Dr. Milam. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of plaintiff's injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. *Page 8 
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs associated with this action.
This the __ day of May 2008.
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1